UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$1,399,313.74 IN UNITED STATES CURRENCY, FORMERLY ON DEPOSIT IN ACCOUNT NO. _____3844, IN THE NAME OF IVAN MEJIA CABAL AND CARLOS FERNANDO MEJIA CABAL, HELD AT HSBC BANK USA, NEW YORK<br><br>Defendant *in rem*. | Civil case no. 08-CV-01993<br>Judge Scheindlin<br><br><br>NOTICE OF MOTION TO DISMISS VERIFIED COMPLAINT |

**PLEASE TAKE NOTICE** that attorneys for Claimants Iván Felipe Mejía Cabal and Carlos Fernando Mejía Cabal, relying on the Memorandum of Law submitted herewith, will move this Court at the United States Courthouse, 500 Pearl Street, New York, New York 10007, for an Order dismissing the Verified Complaint.

Dated: Roseland, New Jersey
       March 24, 2008

                                            Respectfully submitted,

                                            s/Alan Silber
                                            Alan Silber (AS 2370)
                                            Attorney for Claimants Iván Felipe Mejía Cabal
                                            and Carlos Fernando Mejía Cabal

                                            WALDER, HAYDEN & BROGAN, P.A.
                                            5 Becker Farm Road
                                            Roseland, New Jersey 07068
                                            (973) 992 5300
                                            asilber@whbesqs.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$1,399,313.74 IN UNITED STATES CURRENCY, FORMERLY ON DEPOSIT IN ACCOUNT NO. _____3844, IN THE NAME OF IVAN MEJIA CABAL AND CARLOS FERNANDO MEJIA CABAL, HELD AT HSBC BANK USA, NEW YORK<br><br>Defendant *in rem*. | Civil case no. 08-CV-01993 (SAS)<br>Judge Scheindlin, U.S.D.J. |
|---|---|

**CLAIMANTS IVÁN FELIPE MEJÍA CABAL AND CARLOS FERNANDO MEJÍA CABAL'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE VERIFIED COMPLAINT**

Alan Silber
WALDER, HAYDEN & BROGAN, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 992-5300
asilber@whbesqs.com
**Attorneys for Claimants**

On the Brief:
    Ed Licitra (admitted pro hac vice)
    Fine & Licitra LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION .......................................................................................................... 1

II. LEGAL STANDARDS APPLICABLE TO THIS MOTION ...................................... 1

III. LEGAL BASES FOR FORFEITURE ASSERTED BY THE GOVERNMENT ........... 3

    18 U.S.C. §1956 ............................................................................................................ 3

    18 U.S.C. §1957 ............................................................................................................ 3

    18 U.S.C. § 984 ............................................................................................................. 4

    31 U.S.C. § 5317(c) ..................................................................................................... 4

    SUMMARY .................................................................................................................. 5

IV.   DETAILED FACTS ALLEGED – WHAT THE COMPLAINT SAYS, AND WHAT IT DOES NOT .................................................................................................. 5

    A.   No allegations that the Defendant Funds are related to narcotics trafficking or the laundering of narcotics proceeds ............................................ 5

    B.   No allegations that the Defendant Funds are related to structured deposits ................................................................................................................ 10

V.    18 U.S.C. § 984 DOES NOT EXCUSE THE GOVERNMENT FROM SHOWING A CONNECTION BETWEEN FUNDS GOING INTO THE HSBC ACCOUNT AND OFFENSES GIVING RISE TO FORFEITURE ......................... 12

VI. CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

Bell Atlantic Corp. v. Twombley
  127 S.Ct. 1955 (2007) ............................................................................................................. 1

Bell Atlantic Corp., supra .................................................................................................... 15

United States v. $3,500 in U.S. Currency
  2008 WL 215807 (E.D.N.C. Jan. 24, 2008) ........................................................................... 2

United States v. All Funds on Deposit
  in Dime Savings Bank of Willamsburg
  Account No. 58-400738-1 in the Name of Ishar Abdi and Barbara Abdi
  255 F.Supp. 2d 56, 69 (E.D.N.Y. 2003) ................................................................................. 2

United States v. Certain Accounts, Together with All Monies on Deposit Therein
  795 F. Supp. 391, 394 (S.D. Fla. 1992) ................................................................................. 2

United States v. Mondragon
  313 F.3d 862 (4th Cir. 2002) .................................................................................................. 2

United States v. Rodriguez Cortes
  949 F. 2d 532 (1st Cir. 1991) .................................................................................................. 9

**Statutes**

18 U.S.C. § 1957 ....................................................................................................................... 3

18 U.S.C. § 983(c) (1) ............................................................................................................... 2

18 U.S.C. § 983(d) .................................................................................................................... 8

18 U.S.C. § 984 ........................................................................................................... 4, 5, 12, 14

18 U.S.C. §1956 ........................................................................................................................ 3

18 U.S.C.§ 984 (a)(2) ............................................................................................................. 14

31 U.S.C. § 5313 ....................................................................................................................... 4

31 U.S.C. § 5313a ................................................................................................................... 11

31 U.S.C. § 5316 ....................................................................................................................... 4

31 U.S.C. § 5324 ....................................................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 1

Rule G(2)(f) .............................................................................................................................. 2

Rule G(5)(b) .............................................................................................................................. 1

Rule G(8)(b)(i) .......................................................................................................................... 1

Claimants IVÁN FELIPE MEJÍA CABAL and CARLOS FERNANDO MEJÍA CABAL, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rules G(5)(b) and G(8)(b)(i), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, having filed Verified Statements of Right or Interest, hereby move for an order dismissing the instant Verified Complaint, and state:

## I. INTRODUCTION

The instant Verified Complaint for civil forfeiture ("Complaint") is dismissible because – incredibly - it includes *no* factual allegations indicating that the Defendant Funds were the product of, or used in connection with, criminal activity justifying forfeiture.

## II. LEGAL STANDARDS APPLICABLE TO THIS MOTION

The Supreme Court has articulated the principles applicable to motions for 12(b)(6) as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1959 (2007).

That standard is heightened in civil forfeiture cases, in which the complaint <u>does</u> need detailed factual allegations. Rule G, Supplemental Rules for Admiralty or Maritime Claims and

Asset Forfeiture Actions, governs civil forfeiture actions *in rem* that arise, as does the instant case, from federal statutes. Rule G(2)(f) requires that a civil forfeiture complaint must

> state sufficiently ***detailed facts*** to support a reasonable belief that the government will be able to meet its burden of proof at trial [emphasis added].[1]

The Government cannot seize and continue to hold property upon conclusionary allegations that the property is forfeitable. United States v. All Funds on Deposit in Dime Savings Bank of Willamsburg Account No. 58-400738-1 in the Name of Ishar Abdi and Barbara Abdi, 255 F.Supp. 2d 56, 69 (E.D.N.Y. 2003) , citing United States v. Certain Accounts, Together with All Monies on Deposit Therein, 795 F. Supp. 391, 394 (S.D. Fla. 1992); see United States v. $3,500 in U.S. Currency, 2008 WL 215807 (E.D.N.C. Jan. 24, 2008 (where complaint alleged amount of money seized, location of seizure, present location of funds, and that funds were used, intended to be used or represented proceeds of narcotics trafficking, "these paltry allegations do not come near to satisfying" Rule G(2)(f) requirements). The facts alleged must show a connection between the property seized and the alleged crimes for which forfeiture is sought. United States v. Mondragon, 313 F.3d 862, 865-866 (4th Cir. 2002) (allegations that currency was seized, how it was packaged, and when, where and by whom it was seized would be insufficient to plead connection between currency and drug trafficking under standard that complaint must allege sufficient facts to support reasonable belief that property is subject to forfeiture).

---

[1] The Government's burden of proof at trial is that it "establish, by a preponderance of the evidence, that the property is subject to forfeiture". 18 U.S.C. § 983(c) (1).

2

### III. LEGAL BASES FOR FORFEITURE ASSERTED BY THE GOVERNMENT

The Government seeks forfeiture of the Defendant Funds pursuant to four federal statutes (and the statutes referred to therein).

### 18 U.S.C. §1956

The first claimed basis for forfeiture is that the Defendant Funds are property involved in a transaction in violation of 18 U.S.C. §1956 – that is, a transaction designed

> (i) to conceal or disguise the nature, the location, the source of ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

Complaint ¶¶ 34-37.

The Government alleges that forfeiture is warranted under this provision "[b]ecause the Defendant Funds relate to the concealment and laundering of narcotics proceeds". Complaint ¶ 38.

### 18 U.S.C. §1957

The second claimed basis for forfeiture is that the Defendant Funds are property involved in a transaction in violation of 18 U.S.C. § 1957 – that is, a transaction

> in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity

where

> the offense under this section takes place in the United States.

Complaint ¶¶ 39-43.

The Government alleges that forfeiture is warranted under this provision "[b]ecause the Defendant Funds constitute criminally derived property derived from narcotics trafficking and

3

the laundering of monetary instruments, exceed $10,000, and were involved in a monetary transaction". Complaint ¶ 44.

### 18 U.S.C. § 984

The third claimed basis for forfeiture is 18 U.S.C. § 984 which, the Government states,

> permits the Government to seize and forfeit funds in a bank account into which forfeitable assets have been transferred within one year, without the necessity of showing that the specific funds now in the account themselves constitute forfeitable funds. In other words, "tracing" of the funds in the account now to the forfeitable funds that were transferred into the account is not required for transfers within one year of the seizure.

Complaint ¶ 47.

### 31 U.S.C. § 5317(c)

The fourth and final claimed basis for forfeiture is that the Defendant Funds are property involved in a violation of 31 U.S.C. § 5313, 31 U.S.C. § 5316, or 5324 in violation of 31 U.S.C. § 5317(c).

Specifically, the Complaint points out that 31 U.S.C. § 5313 "mandates reports by financial institutions on domestic coins and currency transactions"; and that 31 U.S.C. § 5324(a) prohibits structuring or assisting in structuring transactions with domestic financial institutions for the purpose of evading specified reporting or recordkeeping requirements imposed on those institutions by federal law. Complaint ¶¶ 48-50.

The Government alleges that forfeiture is warranted under this provision "[b]ecause the Defendant Funds are involved in transactions structured to evade reporting requirements". Complaint ¶ 51.

4

## SUMMARY

In accordance with the foregoing, the Complaint seeks forfeiture on the boilerplate allegations that the Defendant Funds:

"relate to the concealment and laundering of narcotics proceeds";

"constitute criminally derived property derived from narcotics trafficking and the laundering of monetary instruments, exceed $10,000, and were involved in a monetary transaction"; and

"are involved in transactions structured to evade reporting requirements".

No detailed facts alleged in the Complaint support any of these assertions.[2]

## IV. DETAILED FACTS ALLEGED – WHAT THE COMPLAINT SAYS, AND WHAT IT DOES NOT

### A. No allegations that the Defendant Funds are related to narcotics trafficking or the laundering of narcotics proceeds

Although the "Claim for Forfeiture" section of the Complaint (¶34 ff.) is awash in the language of narcotics trafficking and money laundering, the specific allegations of the Complaint do not allege any relation between the Defendant Funds and those activities.

- First, there is no allegation that the Claimants/Accountholders, the Mejía Cabal brothers ("the Mejías"[3]), are in any way connected with drug trafficking.

---

[2]   18 U.S.C. § 984 does not provide an independent basis for forfeiture. It merely frees the Government from having to prove that the dollars in an account are the same dollars traceable to the criminal offense justifying forfeiture where the forfeiture action is commenced no more than one year from the date of the offense.

[3]   Spanish speakers commonly identify themselves by both paternal and maternal surnames, in that order (e.g., Iván **Mejía Cabal**). Where only one surname is used, it is customarily the paternal. For that reason, the Mejía Cabals will be referred to herein as "the Mejías", and Oscar Franco Lema as "Franco".

5

What is alleged is that they "own and operate a business, Industrias de Envases, S.A., located in Columbia [sic], that manufactures containers". Complaint ¶ 7.[4] In short, they are industrialists who "opened the [HSBC Account at issue] to save enough money to buy an apartment in New York City. This was the reason why there were no withdrawals." Complaint ¶ 17b. There is no allegation that the Mejías are or have ever been involved in any kind of criminal activity.

- There is no allegation that the Colombian pesos used to buy the dollars that went into the Mejías' HSBC Account ("Mejía Account") were in any way derived from the commission of a crime.

What is alleged is only that the pesos used to buy the Defendant Funds came from Iván Mejía's personal checking account, with no allegation or even suggestion that that account contained anything other than legitimately earned funds. Complaint ¶ 17e.

- There is no allegation tracing any of the dollars that went into the Mejía Account to any identified narcotics or money laundering activity.

Typically in forfeiture cases involving currency exchange intermediaries, the problem giving rise to the forfeiture is that the currency exchanger used by the accountholder delivers to the subject account dollars which the government alleges it can trace to specific narcotics trafficking or money laundering operations. <u>No such allegation exists here.</u>

---

[4] The website of Industrias de Envases, S.A., www.induvases.com, states that the company was founded in 1950 and that "We manufacture, supply and commercialize aluminum collapsible tubes for the packing of pharmaceutical products, food, cosmetics, hair dyes, chemical products, etc."

6

- There is no allegation that the currency exchanger used by the Mejías, Oscar Franco Lema ("Franco"), had any connection with any narcotics or money laundering activity.[5] What is alleged is that Iván Mejía described Franco as being "well-known" as a currency exchanger[6] in Cali, Colombia; that Iván Mejía made monthly purchases of $20,000 from Franco; that the majority of the deposits into the HSBC Account were made by Franco or at his direction; and that Iván Mejía paid Franco in pesos after dollars were deposited into the Mejía Account. What is alleged with regard to the sources of the dollars is that there were wire transfers and checks directly from accounts controlled by Franco, and checks drawn on personal accounts of numerous different individuals. <u>There is no allegation that any of the individuals on whose accounts the checks were drawn was engaged in narcotics-related activity.</u> Complaint ¶¶ 17b.-f.; 21-30.

In the absence of specific allegations that the Accountholders, their pesos, their currency exchanger, or the dollars obtained by the currency exchanger are related to drug trafficking or

---

[5] There is an allegation that "[t]he pattern of wire transfers and deposits into the Mejia Account prior to the date of seizure are indicative of black market peso money laundering operations." Complaint ¶ 20. The Complaint does not allege any detailed facts explaining this assertion, and certainly does not allege that <u>any</u> identifiable funds deposited into the Mejía Account are associated with <u>any</u> identifiable drug-related activity. To the extent the assertion in paragraph 20 relates to the crimes of smurfing and/or structuring, the government's failure in pleading is dealt with in Section IV B, "No allegations that the Defendant funds are related to structured deposits" at p. 10, infra.

[6] The Government uses the term "peso broker" repeatedly in its Complaint. To the extent the Government uses that term to describe people who sell dollars to facilitate the laundering of drug proceeds, Claimants will not follow the Government's lead in using that term to describe Mr. Franco, particularly in the absence of any allegation that either the dollars or the pesos in the exchange transactions intermediated by Franco are related to identified narcotics-related activity.

7

money laundering, what is the basis for the Government's conclusory allegation that the Defendant Funds are associated with drug trafficking and/or money laundering?

The answer appears to be in paragraphs 5-11 of the Complaint, in which the Government makes general allegations about Colombian drug traffickers' use of "peso brokers" to launder the proceeds of their drug sales. The key allegations appear to be those contained in paragraph 10:

> The fact that the Black Market Peso Exchange almost invariably utilizes narcotics proceeds has been widely publicized in Colombia. Any party using BMPE brokers in Colombia thus knows or reasonably should know that there is a substantial likelihood that the dollars they receive as the result of their transactions with peso brokers are the proceeds of narcotics transactions.

This paragraph, or one very much like it - focusing on what the purchaser of dollars "knows or reasonably should know" - appears to have originally been drafted as an argument that a Colombian who buys dollars from a non-institutional source should not prevail on an "innocent owner" defense.[7] The "innocent owner" defense only comes into play once the Government establishes that the subject property is subject to forfeiture. The Government's "knows or reasonably should know" assertions thus put the cart before the horse in the absence of allegations that the seized dollars were associated with criminal activity in the first place.

Nevertheless, following the apparent "logic" of the Complaint, the Government's chain of reasoning appears to be:

> "On information and belief, [Franco] has been operating as a peso exchange broker in Cali, Columbia [sic]." Complaint ¶21;
>
> The so-called Black Market Peso Exchange "almost invariably uses narcotics proceeds";
>
> Therefore, the funds that Franco obtained for the Mejias must have been narcotics proceeds.

---

[7] The rules governing the innocent owner defense are set forth at 18 U.S.C. § 983(d).

8

Somewhere between "information and belief" and "almost invariably", this fractured syllogism makes a mockery of the justice system as it relates to civil forfeiture.

If the Government has its way in this case, it will use the mere *characterization* of Franco as a Colombian "peso broker" as its linchpin allegation "establishing" that drug proceeds entered the Mejía Account – we call him a "peso broker", therefore it can be assumed, without more, that he is involved in "the Black Market", which implies the use of narcotics proceeds in transactions in the market. Such reasoning impermissibly attempts to substitute characterizations for allegations of detailed fact connecting the Defendant Funds to the crimes alleged.

Further, what the Government appears to be saying in this Complaint is why would we need to allege any *actual* transaction involving drug proceeds or money laundering if Franco was a *Colombian* currency exchanger?

It is not difficult to imagine the reaction that would ensue if a complaint were based on the suggestion that a person's being African-American was proof enough of his not having taken due care, or that a person's being Jewish was proof enough of his being a usurious lender. The implicit assumption at the heart of this Verified Complaint – that Franco's being Colombian is proof enough of his being involved with drug trafficking or money laundering[8] – is no less ugly or unjustified. See United States v. Rodriguez Cortes, 949 F. 2d 532, 541-542 (1st Cir. 1991) (lower court erred in drug smuggling conspiracy case in admitting into evidence card identifying one defendant as Colombian where card could have been and was in fact used as basis for making generalizations about Colombians).

---

[8] "Proof enough" in the sense that it is being offered as a sufficiently detailed fact to support a reasonable belief that the Government will be able to meet its burden of proof at trial.

The mere invocation of a derogatory stereotype cannot be permitted as a substitute for factual evidence warranting the taking of private property.

It should go without saying that even if - to postulate a circumstance Claimants believe *grossly* exaggerates the reality - 80% of the dollars handled by non-institutional currency exchangers in Colombia were the product of narcotics transactions, that "fact" in itself would be immaterial where the issue is the source of particular dollars obtained by a particular currency exchanger such as Franco.[9] To state sufficiently detailed facts to support a reasonable belief that it will prevail, the Government must allege facts – not boilerplate, not stereotype-fed characterizations - indicating that those particular dollars are from a tainted source.

Despite the fact that the Government seized these funds on September 10, 2007 and investigated for almost half a year before filing its verified complaint, it has been unable to allege any such facts. Complaint ¶¶ 18-19. In proceeding with the instant forfeiture action as if it made absolutely no difference whether its investigation yielded proof of any association between the Defendant Funds and drug trafficking/money laundering, the Government has abused this process.

**B.   No allegations that the Defendant Funds are related to structured deposits**

Equally unsupported by detailed allegations of fact are the Government's claims regarding smurfing and/or structuring.

The Complaint goes to some pains (¶ 29a.-k.) to describe in detail occasions when HSBC "received a package from [Franco] containing multiple checks to one or both of the Mejia Cabals, with the same date, from the same individual". But the other shoe never drops, in the

---

[9] Just as the fact that 80% of a defendant's family members are incarcerated for theft would have no bearing on whether the defendant committed the particular theft at issue.

10

sense that the Government never alleges that these deposits into the Mejía Account were structured to avoid reporting requirements. Nor could the government make such a claim, because all the deposits the Government describes in ¶ 29a.- k. are checks. The crime of structuring does not apply where checks are deposited into an account rather than, *e.g.*, cashed. See 31 U.S.C. § 5313a. (a transaction report is required where "a domestic financial institution is involved in a transaction for the payment, receipt or transfer of United States coins or currency"). The complaint describes the deposit of checks in ¶¶ 22, and 25 to 28. Yet, it is not alleged – because it cannot be – that if the funds had come in one check instead that there would have been any reporting requirement. In short, the amount of the checks deposited would not have triggered a reporting requirement whatever the amount. Moreover, the government offered no analysis of the deposits into the so-called "source" accounts to even allege circumvention of any reporting requirement.

Instead, the Government makes a stretch into pure speculation -- alleging not that the deposits into the Mejía Account were structured, but that <u>it suspects</u> the deposits into the source accounts for the checks deposited into the Mejía Account <u>may have been</u> structured, and may have been laundered drug proceeds to boot:

> the pattern of multiple deposits of small amounts of funds from different U.S.-based bank accounts into the Mejía Account strongly suggests that the Defendant Funds were introduced into the banking system in structured amounts, by means of a smurfing operation or similar scheme, and laundered through the BMPE process.

Complaint ¶ 31.

In other words, having had well over half a year to investigate, the Government has turned up absolutely no evidence that structured deposits were made into the Mejía Account or

11

the source accounts for the checks deposited into the Mejía Account. However, the Government remains suspicious.

The Government's mere suspicion may be an appropriate basis on which to initiate or continue an investigation. It is not an appropriate basis on which to seek forfeiture where that investigation has turned up nothing.

The only other alleged "facts" supporting the Government's claim that the Defendant Funds were involved in structuring and/or smurfing activities is set forth in paragraph 32 of the Complaint. In that paragraph, the Government alleges that during telephone conversations on August 8, 2007 (a month before seizure), with an HSBC account manager, Iván Mejía asked that checks from Franco recently received by HSBC be returned to Franco rather than voided:

> Ivan Mejia told the account manager, in substance, that the checks being deposited into the [Mejia] Account were for foreign exchange transactions in which U.S. Dollars were being exchanged for Columbian [sic] pesos. During the August 8, 2007 conversations, Ivan [Mejia] discussed with the HSBC representative the disposition of checks from [Franco] that HSBC had recently received. Ivan Mejia asked that HSBC not void the checks and instead return the checks to [Franco]. He also asked that any additional checks HSBC receives from [Franco] be returned to [Franco].

There is simply no logical connection between these allegations and the Government's unexplained assertion that they "provide further evidence that all or substantially all of the Defendant Funds are the end result of smurfing and of the BMPE process." Complaint ¶ 32.

### V. 18 U.S.C. § 984 DOES NOT EXCUSE THE GOVERNMENT FROM SHOWING A CONNECTION BETWEEN FUNDS GOING INTO THE HSBC ACCOUNT AND OFFENSES GIVING RISE TO FORFEITURE

Even if the Complaint were not entirely dismissible for the reasons stated above, it is at least partially dismissible in light of the Government's reliance on 18 U.S.C. § 984.

12

As stated in note 2, supra, where funds subject to forfeiture have been deposited into an account § 984 allows the Government to forfeit funds in the account without having to establish that the funds sought to be forfeited are the identical funds related to the criminal activity giving rise to forfeiture. In that sense, the Government is permitted to treat the funds in the account as fungible.[10]

Since the Complaint specifically alleges that there have been no withdrawals from the Mejía Account (¶17b.), § 984 is irrelevant to the Government's claim. If funds traceable to an offense warranting forfeiture ever went into the Account, they were still there at the time of seizure. Because the Government is specifically alleging that it is not seeking forfeiture of "identical property", § 984 simply does not come into play.

However, the Government is relying on § 984 despite the admitted absence of withdrawals. That fact – in conjunction with a Complaint demonstrating no ability to trace the Defendant Funds to any identifiable criminal activity – makes it appear that the Government is attempting to use § 984 for a far broader purpose than the one for which it was written: to absolve it from having to allege any connection between the dollars in the Account and criminal activity justifying forfeiture.[11]

If this is the reason for the Government's reliance on § 984, the Government is entirely misreading the statute. Section 984 does not relieve the Government from its obligation to show that funds from criminal activity giving rise to forfeiture were deposited into an account. Rather, once such a showing has been made, it frees the Government from having to prove that the dollars in the account are the same ones that are traceable to the criminal activity. See 18

---

[10] Section 984 is set forth at paragraph 46 of the Complaint.

[11] See Complaint ¶ 47, quoted in relevant part at page 4, supra.

13

U.S.C.§ 984(a)(2) (for "identical property" to be subject to forfeiture, it must be found in the same location as "the property involved in the offense that is the basis for the forfeiture").

Moreover, even if the Government could use § 984 to free it from having to allege any connection between the Defendant Funds and identifiable criminal activity justifying forfeiture, there is a hitch. Section 984 contains a time restriction:

> **(b)** No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

Accordingly, the Government could only use § 984 – if it were applicable at all – to attempt to forfeit amounts corresponding to "offenses" occurring up to one year before February 28, 2008, the date this action commenced.

The Government's best-case § 984 scenario is that the "offense" is deemed to be the wrongful deposit of funds into the Mejía Account, in which case only the money reflecting deposits made on or after February 28, 2007, is potentially subject to forfeiture. This is the Government's best case because the alternative is that the offense is deemed to be a criminal violation that occurred before the funds were deposited into the Mejía Account, e.g., the structuring of deposits into the source accounts from which checks were deposited into the Mejía Account.[12] Under that scenario, only amounts corresponding to structuring which occurred on or after February 28, 2007, would be subject to forfeiture, even though the subsequent deposit of those funds into the Mejía Account occurred within the one-year period.

For the foregoing reasons, even if the Court were to determine that 18 U.S.C. § 984 permits the Government to seek forfeiture of the Defendant Funds without having to show that

---

[12] By using this example, Claimants do not in any way recede from their position expressed in Section IVb., supra, that the Verified Complaint is entirely devoid of allegations of detailed fact indicating that any such structuring occurred in the source accounts.

the amounts sought to be forfeited were "involved in the offense that is the basis for the forfeiture", the Court should dismiss the instant action to the extent it seeks the forfeiture of amounts that entered the Mejía Account before February 28, 2007.

## VI. CONCLUSION

The Complaint shows that the Government is strongly disposed to see the bogeyman under the bed where the Mejía Account is concerned. The fatal defect in the Complaint is that it goes no further, utterly failing to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." The Complaint reads like nothing more than a declaration of suspicion about persons and actions which the Government has been entirely unable to connect to criminal activity justifying forfeiture. In the absence of any detailed allegations of fact indicating that the Defendant Funds are related to drug trafficking, money laundering or structuring, the Complaint fails to state a claim on which relief can be granted even pursuant to the general 12(b)(6) standard articulated in Bell Atlantic Corp., supra, much less the heightened standard of Admiralty Rule G(2)(f). The Complaint must be dismissed.

Respectfully submitted,

s/Alan Silber
Alan Silber (AS 2370)
Attorney for Claimants Iván Felipe Mejía Cabal
and Carlos Fernando Mejía Cabal

WALDER, HAYDEN & BROGAN, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 992 5300
asilber@whbesqs.com

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$1,399,313.74 IN UNITED STATES CURRENCY, FORMERLY ON DEPOSIT IN ACCOUNT NO. _____3844, IN THE NAME OF IVAN MEJIA CABAL AND CARLOS FERNANDO MEJIA CABAL, HELD AT HSBC BANK USA, NEW YORK<br><br>Defendant *in rem*. | Civil case no. 08-CV-01993<br>Judge Scheindlin<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on March 24, 2008, I electronically filed a (1) Notice of Motion and (2) Memorandum of Law in the above captioned matter. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Mssrs Fine and Licitra have exchanged letters with Assistant United States Attorney Frase prior to the filing of the government's Verified Complaint which we believe satisfies the Court's requirement.

Dated: March 24, 2008

/s/ Alan Silber
Alan Silber

WALDER, HAYDEN & BROGAN, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 992 5300
asilber@whbesqs.com
Attorneys for Claimants Ivan Mejia Cabal and Carlos Fernando Mejia Cabal.