UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                        :

UNITED STATES OF AMERICA,     :
                        :

        Plaintiff,     :

                        :

   - against -     :

                        :

$1,399,313.74 IN UNITED STATES     :
CURRENCY, FORMERLY ON     :
DEPOSIT IN ACCOUNT NUMBER     :
___3844, IN THE NAME OF IVAN     :
MEJIA CABAL AND CARLOS     :
FERNANDO MEJIA CABAL, HELD AT :
HSBC BANK USA, NEW YORK,     :
                        :

       Defendant in rem.     :

                        :

------------------------------------------------------X

**OPINION AND ORDER**

**08 Civ. 1993 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

# I.   INTRODUCTION

        On February, 28, 2008, the Government filed a verified complaint for

civil forfeiture in rem against $1,399,313.74 in funds (the "Defendant Funds")

held in a personal savings account at HSBC Bank in New York (the "Account") in

the names of Ivan Felipe Mejia Cabal and Carlos Fernando Mejia Cabal

(collectively, "Claimants"). The Defendant Funds were seized by the Government

on September 10, 2007 pursuant to a warrant issued by this Court. Claimants now

move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil

Procedure and Rules G(5)(b) and G(8)(b)(i) of the Supplemental Rules for Certain

Admiralty and Maritime Claims (the "Supplemental Rules").  For the following

reasons, the motion is granted.

## II.    BACKGROUND[1]

The Account is a personal savings account that was opened on or

about July 11, 2002 at HSBC Bank in New York, New York.[2]  Claimants are the

beneficial owners and signatories on the Account.[3]  Ivan Mejia lives in Cali,

Colombia and is the day-to-day manager of the Account.[4]  Carlos Mejia lives in

Spain and receives monthly statements for the Account.[5]  Claimants own and

operate a container manufacturing business located in Colombia.[6]

The Government initiated an investigation into the Account after

HSBC contacted the Drug Enforcement Administration (the "DEA") regarding the

_____

[1]    The following facts are drawn from the Verified Complaint ("Compl.") and are assumed to be true for purposes of this motion.

[2]    *See* Compl. ¶¶ 13-14.

[3]    *See id.* ¶ 14.

[4]    *See id.* ¶ 15.

[5]    *See id.*

[6]    *See id.* ¶ 16.

Account's activity.[7] During telephone interviews with the DEA, Ivan Mejia stated

that Claimants used the Account to conduct monthly exchanges of U.S. dollars and

Colombian pesos with peso broker Oscar Franco Lema so they could accumulate

enough money to purchase an apartment in New York.[8]

Ivan Mejia made monthly purchases of dollars from Lema and

initiated each purchase by calling Lema and advising him as to how much

currency he wished to purchase.[9] Lema then wired or deposited dollars into the

Account in the form of checks that originated in the United States.[10] The

Government alleges that Lema's deposits often consisted of multiple checks drawn

on the same account, held in the name of parties other than Lema, and dated with

the same date for sums below the financial reporting threshold.[11] It was Ivan

Mejia's understanding that Lema sold U.S. dollars that came from check payments

made by customers of Lema's family business in Colombia.[12] Once Lema

---

[7]     *See id.* ¶ 13.

[8]     *See id.* ¶ 17.

[9]     *See id.*

[10]    *See id.*

[11]    *See id.* ¶¶ 25-31.

[12]    *See id.*

deposited the requested amount in the Account, Ivan Mejia would receive a notification from HSBC that checks had been deposited.[13]  At that point, Ivan Mejia would then write a personal check to Lema for the equivalent amount in pesos.[14]  During these transactions, no paperwork or financial documents were exchanged between Claimants and Lema, and there was no simultaneous exchange of currency made by Claimants.[15]

The Government maintains that the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 984, and 31 U.S.C. § 5317(c).  The Government alleges that this movement of funds – *i.e.*, the buying of U.S. dollars for Colombian pesos without the reporting of taxes and tariffs – is the hallmark of an unofficial currency trading system known as the "Black Market Peso Exchange"(the "BMPE").[16]  According to the Government, the BMPE is widely known in Colombia as a tool used by drug traffickers to promote and conceal their illegal earnings.[17]  The Government premises forfeiture in the instant case on the

---

[13]     *See id.* ¶ 17.

[14]     *See id.*

[15]     *See id.* ¶ 23.

[16]     *See id.* ¶¶ 6-12.

[17]     *See id.* at ¶ 10.

ground that the "pattern of wire transfers and deposits into the [] Account prior to the date of the seizure are indicative of black market peso money laundering operations."[18]  Moreover, "the pattern of multiple deposits of small amounts of funds from different U.S.-based bank accounts into the [] Account strongly suggests that the Defendant Funds were introduced into the banking system in structured amounts, by means of a smurfing operation or similar scheme, [] laundered through the BMPE process[,]"[19] and now constitute the "end result of the BMPE process."[20]

## III.    LEGAL STANDARD

Federal forfeiture laws make all money furnished in exchange for controlled substances, and all proceeds traceable to such an exchange, subject to civil forfeiture.[21]  When funds are seized for civil forfeiture by a government agency, timely notice of the forfeiture proceedings must be given to "interested parties," including the property owner.[22]  If the property owner or other interested

---

[18]    *Id.* ¶ 20.

[19]    *Id.* ¶ 31.

[20]    *Id.* ¶ 25.

[21]    *See* 21 U.S.C. § 881(a)(6).

[22]    18 U.S.C. § 983(a)(1)(A)(i).

parties wish to challenge the forfeiture, they must claim an interest in the property and establish ownership.[23]  Once the property owner claims an interest, the forfeiture is pursued as a judicial forfeiture in accordance with the Supplemental Rules.[24]

Under the Civil Action Forfeiture Act of 2000 ("CAFRA"), codified in part at 18 U.S.C. § 983, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."[25] "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense."[26]  This "preponderance of the evidence" standard replaced the "probable cause" standard applied in pre-CAFRA forfeiture cases.[27]

To satisfy the pleading requirements in a forfeiture action, Rule

---

[23]    *See id.* § 983(a)(2).

[24]    *See id.* § 983(a)(3)(A).

[25]    *Id.* § 983(c)(1).

[26]    *Id.* § 983(c)(3).

[27]    *See, e.g., United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 n.4 (7th Cir. 2005).

E(2)(a) of the Supplemental Rules requires that the Government set forth its claims in the complaint "with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." This means that the Government's complaint must "assert specific facts supporting an inference that the property is in fact subject to forfeiture."[28]

These requirements are "more stringent than the general pleading requirements . . . [,] an implicit accommodation to the drastic nature of the civil forfeiture remedy."[29] While the Government is not required at the pleading stage to meet its ultimate burden of establishing the application of forfeiture by a

---

[28]    *United States v. All Funds on Deposit in Dime Savings Bank of Williamsburg Account No. 584007381 in the Name of Ishar Abdi and Barbar Abdi ("Dime Savings")*, 255 F. Supp. 2d 56, 66-67 (E.D.N.Y. 2003) (quotation marks omitted). *Accord United States v. Approximately $25,829,681.80 in Funds, plus Interest, in Court Registry Investment Sys.*, No. 98 Civ. 2682, 1999 WL 1080370, at *7 (S.D.N.Y. Nov. 30, 1999) (citing *United States v. All Right, Title & Interest in Real Property & Appurtenances Known as 288-290 N. St., Middletown, New York*, 743 F. Supp. 1068, 1074 (S.D.N.Y. 1990); *United States v. All Right, Title & Interest in Real Property & a Bldg. Known as 16 Clinton St., New York, New York*, 730 F. Supp. 1265, 1267 (S.D.N.Y. 1990)). *See also United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002) (holding that the complaint must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture).

[29]    *United States v. $15,270,885.69*, No. 99 Civ. 10255, 2000 WL 1234593, at *2-3 (S.D.N.Y. Aug. 31, 2000) (quoting *United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993)).

-7-

preponderance of the evidence, it "may not seize and continue to hold property

upon conclusory allegations that the defendant property is forfeitable."[30]

However, the Government is not required to allege in the complaint all of the facts

and evidence at its disposal. It is sufficient for the Government to simply plead

enough facts for the claimant to understand the theory of forfeiture, to file a

responsive pleading, and to undertake an adequate investigation.[31] The issue is

one of pleading, not proof at trial.[32] And it is for this reason that "[n]o complaint

---

[30]     *United States v. Certain Accounts, Together with all Monies on Deposit Therein,* 795 F. Supp. 391, 394 (S.D. Fla. 1992) (citing *United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1548 (11th Cir. 1987)).

[31]     *See Dime Savings,* 255 F. Supp. 2d at 69. *Accord United States v. $109,086.00,* No. Civ.A. H-04-3727, 2005 WL 1923613, at *5 (S.D. Tex. Aug. 10, 2005) (holding that the Government need not set out the evidence of its allegations in its complaint or plead every fact at its disposal).

[32]     Two Eleventh Circuit cases are useful in understanding what courts demand of the Government in such forfeiture actions. In *United States v. Two Parcels of Real Prop. Located in Russell County, Ala.,* 92 F.3d 1123 (11th Cir. 1996), the Eleventh Circuit found the complaint sufficient and affirmed a denial of a motion to dismiss for insufficiency. The complaint alleged that the claimants were involved in drug dealing activities and that the proceeds were used to buy the property that was subject to forfeiture. *See id.* at 1127 n.1. The complaint generally described the method of the drug sales, discussed the handling of cash by drug dealers, and alleged that the properties to be forfeited were purchased with cash. *See id.* at 1127. The court held that the information in the complaint satisfied the pleading requirement because "there were sufficient facts detailed in the complaint to put claimants on notice of the Government's basis for seizure." *Id.* The fact that the complaint did not allege specific drug deals, participants other than the claimants, quantities of the drugs sold, dollar amounts, dates, or locations did not render the complaint insufficient. *See id.*

-8-

may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."[33]

With respect to a Rule 12(b)(6) motion, courts must accept all the factual allegations in the complaint as true and must draw all inferences from those allegations in the light most favorable to the Government.[34] However, to state a claim adequately the factual allegations must be sufficient "to raise a right to relief above the speculative level."[35]

## IV.    APPLICABLE LAW

### A.    Claim Pursuant to 18 U.S.C. § 981(a)(1)(A) ("section 981(a)(1)(A)") and 18 U.S.C. § 984 ("section 984")

---

In contrast, in *United States v. $38,000 in United States Currency,* 816 F.2d 1538 (11th Cir. 1987), the Eleventh Circuit reversed the district court's denial of claimant's motion to dismiss and remanded for dismissal where the complaint was "completely devoid of factual support for the Government's allegation" that the seized currency was in any way linked to the exchange of a controlled substance. *See id.* at 1548. In that case, the complaint simply stated that the currency was seized, identified the individual from whom it was seized, and stated the location and date of the seizure. *See id.* There was no indication of a connection between the seized currency and any controlled substance. *See id.*

[33]    18 U.S.C. § 983(a)(3)(D).

[34]    *See United States v. The Baylor Univ. Med Ctr.*, 469 F.3d 263, 267 (2d Cir. 2006).

[35]    *Bell Atlantic Corp. Twombly*, 127 S. Ct. 1955, 1965 (2007).

Section 981(a)(1)(A) permits forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section[s] 1956, 1957 or 1960 of this title, or any property traceable to such property."

Section 984 permits the Government to seize funds in a bank account into which forfeitable assets have been transferred within one year.  It provides, in pertinent part:

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

Section 984 does not relieve the Government of its obligation to show

that funds derived from a criminal activity were deposited into the Account.

Rather, once such a showing has been made, it frees the Government from having

to prove that the dollars in the Account are the same ones that are traceable to the

criminal activity giving rise to the forfeiture.

### 1.    18 U.S.C. § 1956 ("section 1956")

Section 1956 provides in pertinent part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part –

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

-11-

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.[36]

As used in section 1956(a), "specified unlawful activity" includes the manufacture, importation, sale, or distribution of a controlled substance as well as any offense under section 1961(1) of title 18 of the United States Code ("section 1961").[37]

### 2.    18 U.S.C. § 1957 ("section 1957")

Section 1957 subjects to criminal penalties:

(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary

---

[36]    18 U.S.C. § 1956(a).  The Supreme Court recently held that the term "proceeds" as used in section 1956(a)(1) means "profits" rather than the broader term "receipts" where the statute does not define "proceeds," the rule of lenity dictates that the more "defendant-friendly" definition of "profits" be adopted, and there is no legislative history to the contrary. *United States v. Santos*, 128 S. Ct. 2020, 2022-31 (2008) (affirming vacatur of money-laundering convictions of operator and employee of illegal lottery where convictions were based on transactions involving payments made by the operator to lottery winners and employees, and receipt of such payment by the employee, on the ground that "[t]ransactions that normally occur during the course of running a lottery are not identifiable uses of profits and thus do not violate the money-laundering statute").

[37]    *See* 18 U.S.C. § 1956(c)(7).

-12-

transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity . . . .[38]

A violation of section 1957 thus requires a showing *first*, that the

defendant knowingly engaged in a monetary transaction; *second*, that the

defendant knew the property was criminally derived; and *third*, that the property

was of a value greater than ten thousand dollars.[39]  The key term is "criminally

derived property," which is defined in section 1957 as "any property constituting,

or derived from, proceeds obtained from a criminal offense."[40]  This refers to

funds obtained from a prior, separate criminal act since money laundering "must

be a crime distinct from the crime by which the money is obtained."[41]

## B.    Claim Pursuant to 31 U.S.C. § 5317(c) ("section 5317(c)")

---

[38]    *Id.* § 1957(a).  Subsection (d) states that the "circumstances referred to in subsection (a) are – (1) that the offense . . . take place in the United States . . . ; or (2) that the offense . . . take place outside the United States . . . but the defendant is a United States person . . . ."

[39]    *See United States v. Johnson*, 450 F.3d 366, 375 (8th Cir. 2006).

[40]    18 U.S.C. § 1957(a), (f)(2).

[41]    *United States v. Abuhouran*, No. CR. A. 95-560-04, 2001 WL 849716, at *1-2 (E.D. Pa. July 12, 2001) (citing *United States v, Conley*, 37 F.3d 970, 980 (3d Cir. 1994)).  *Accord United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2001) ("Our case law consistently distinguishes between the crime that produces proceeds and the subsequent crime of laundering those proceeds, even though the transactions may flow together"); *United States v. Savage*, 67 F.3d 1435, 1442 (9th Cir. 1995).

Section 5317(c) subjects to seizure by and forfeiture to the

Government of "[a]ny property involved in a violation of section 5313, 5316, or

5324 of this title, or any conspiracy to commit any such violation, and any

property traceable to any such violation or conspiracy . . . ."[42]  31 U.S.C. § 5313(a)

("section 5313(a)") mandates that domestic financial institutions "involved in a

transaction for the payment, receipt, or transfer of [U.S.] coins or currency . . . in

an amount, denomination . . . or under circumstances the Secretary [of the

Treasury] prescribes by regulation," as well as "any other participant in the

transaction the Secretary may prescribe shall file a report on the transaction at the

time and in the way the Secretary prescribes."[43]

Section 5316(a) of title 31 of the United States Code states, in

relevant part, that:

> a person or an agent or bailee of the person shall file a report . . .
> when [she] knowingly – (1) transports, is about to transport, or
> has transported, monetary instruments of more than $10,000 at
> one time – (A) from a place in the United States to or through a
> place outside the United States; or (B) to a place in the United
> States from or through a place outside the United States . . . .[44]

---

[42]   31 U.S.C. § 5317(c)(2).

[43]   *Id.* § 5313(a).

[44]   *Id.* § 5316(a).

-14-

31 U.S.C. § 5324(a) ("section 5324(a)") prohibits structuring transactions with domestic financial institutions for the purpose of evading specified reporting or record-keeping requirements imposed by federal law, including the Bank Secrecy Act.[45]  Congress passed this law in response to the increasing use of banks and other financial institutions to launder illicit profits. The Bank Secrecy Act requires domestic banks to report any transactions involving more than ten thousand dollars in cash.[46]  Further, under section 5324(a), "[n]o person shall, for the purpose of evading the reporting requirements of section 5313(a) . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."[47]

The Supreme Court has defined structuring as the act of "break[ing] up a single transaction above the reporting threshold into two or more separate

---

[45]     *See* 31 C.F.R. § 103.22.  The Bank Secrecy Act provides, in part, that "[e]ach financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000, except as otherwise provided in this section."  *Id.* § 103.22(b)(1).

[46]     *See* 31 U.S.C. § 5313.

[47]     *Id.* § 5324(a)(3).

transactions [] for the purpose of evading a financial institution's reporting requirement . . . ."[48] In *Ratzlaf v. United States*, the Supreme Court held that a structuring conviction requires a showing "that the defendant acted with knowledge that his conduct was unlawful."[49] Congress, however, later amended the law such that willfulness is no longer required for a violation of section 5324(a).[50]

## V.   DISCUSSION

The Government contends that the Defendant Funds are subject to forfeiture pursuant to sections 981(a)(1)(A) and 984 as property involved in a transaction or attempted transaction in violation of sections 1956 and 1957. Additionally, the Defendant Funds are allegedly subject to forfeiture pursuant to section 5317(c) as property involved in a transaction structured to evade reporting requirements in violation of sections 5313(a) and 5324(a), or any conspiracy to commit such violation.

---

[48]   *Ratzlaf v. United States*, 510 U.S. 135, 136 (1994) (quotation marks omitted).

[49]   *Id.* at 137.

[50]   *See Aversa v. United States*, 99 F.3d 1200, 1205 n.4 (1st Cir. 1996) (citing Pub.L. No. 103-325, § 411, 108 Stat. 2160 (Sept. 23, 1994) (codified as amended at 31 U.S.C. §§ 5322(a))).

### A.    Claim Pursuant to Sections 981(a)(1)(A) and 984

Under section 984, the Government may only seize an amount corresponding to "offenses" occurring up to one year before February 28, 2008 – the date on which the Complaint in this action was filed.  Therefore, only deposits made into the Account on or following February 28, 2007 are subject to forfeiture.

### 1.    Section 1956

There is no allegation supporting a reasonable belief that Claimants, who operate a container manufacturing company, had any connection to the manufacture, importation, sale or distribution of a controlled substance, or any other offense listed in section 1961.  There is no allegation that the Colombian pesos used to purchase the dollars that were deposited into the Account were in any way derived from the commission of a crime.  The Government has pled no facts to support an inference that any of the Defendant Funds from the Account "represent[] the proceeds of some form of unlawful activity" that can be traced to identified narcotics or other criminal activity, or that Claimants knew that the Defendant Funds represented such proceeds.[51]

---

[51]    18 U.S.C. § 1956(a)(1).

Further, the Government does not allege that Claimants knew that their transactions with Lema were "designed . . . to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds" of narcotics or money laundering activity, or to avoid a transaction reporting requirement.[52] Nor is there any allegation that peso broker Lema had connections to any narcotics, money laundering, or other criminal activity.

Instead, the Government attempts to shroud the absence of facts supporting an inference that the Defendant Funds are subject to forfeiture on this ground by reciting general facts about the BMPE process. This attempt to link the Defendant Funds, Claimants, and Lema to the BMPE process fails, however, where the Complaint is comprised of conclusory allegations that are insufficient to "to raise a right to relief above the speculative level."[53]

Because the Government has failed to adequately allege that the Defendant Funds were "involved in a transaction or attempted transaction in violation of section [] 1956," and because any allegations that the Defendant Funds constitute the proceeds of unlawful activity or property traceable to such

---

[52]    *Id.*

[53]    *Twombly*, 127 S. Ct. at 1965.

-18-

proceeds are conclusory at best, forfeiture pursuant to sections 981(a)(1)(A) and 1956 cannot stand.

## 2. Section 1957

The Complaint alleges that Lema, acting on behalf of Claimants, deposited checks in value greater than ten thousand dollars into the Account.[54] There are, however, no allegations supporting a reasonable belief that these funds involved criminally derived property and that Claimants were aware of such illegal origin. Although the Government states in conclusory fashion that "the Defendant Funds constitute criminally derived property derived from narcotics trafficking and the laundering of monetary instruments,"[55] this bare allegation cannot support the claim.

The Government infers (and implicitly asks the Court to infer) that because Claimants used the services of a peso broker, the money deposited into

---

[54] Depositing a check received as a result of criminal activity constitutes "a monetary transaction in criminally derived property" under section 1957. *See Dime Savings*, 255 F. Supp. 2d at 62. *Accord United States v. Lomow*, 266 F.3d 1013, 1018 (9th Cir. 2001) ("depositing the check . . . constituted a separate transaction from the fraud that generated the funds"); *United States v. Graffia*, No. 93 CR 842, 1995 WL 374127, at *3 (N.D. Ill. June 21, 1995) ("The term 'monetary transaction' includes the deposit of a check.").

[55] Compl. ¶ 44.

-19-

the Account necessarily constitutes criminally derived property in violation of

section 1957. While the Complaint highlights that some peso brokers are in fact

involved in the laundering of drug money, no facts are asserted to support an

inference that Lema is such a broker or that the Defendant Funds derived from the

drug trade or other unlawful activities. A complaint devoid of any facts to support

its bare allegations and consisting solely of speculative assertions and innuendo

cannot stand.[56]

### B.    Claim Pursuant to Section 5317(c)

The Government alleges that the Defendant Funds are subject to

forfeiture under section 5317(c) because they "are involved in transactions

structured to evade reporting requirements" and also constitute "property traceable

to any such violation . . . ."[57] The Complaint sets forth a pattern of deposits into

---

[56]    *See, e.g., Flores v. Emerlich & Fike*, 416 F. Supp. 2d 886, 912 (E.D. Cal. 2006) (holding that the Government's claim that the defendants engaged in monetary transactions in property derived from specified unlawful activity in violation of section 1957 cannot stand because "wholly absent from the complaint is any allegation that such payments were illegal or represented the proceeds of unlawful activity").

[57]    Compl. ¶ 50.

-20-

the Account that suggests the deliberate evasion of the bank reporting requirements through structuring of deposits.[58]

According to HSBC records, between June 2005 and July 2007 at least seventy third-party checks were mailed to HSBC from Colombia for deposit into the Account. These checks – which totaled more than $229,000 – came from at least twenty different accounts held at a dozen different banks based in the United States and Argentina. Despite the fact that these checks were drawn on U.S. accounts, they arrived at HSBC in packages sent by Lema from Colombia.[59] Oftentimes, those packages contained multiple checks to Claimants written from the same third party on the same date.[60] It appears that each check was for a sum less than ten thousand dollars.[61] Investigators have been unable to link any of the signatories of these checks to the business activities of either Claimants or Lema.[62] The Complaint further alleges that accounts held by Lema at other banks had been

---

[58]    *See id.* ¶¶ 20-32.

[59]    *See id.* ¶ 27.

[60]    *See id.* ¶ 29.

[61]    *See id.*

[62]    *See id.* ¶ 30.

-21-

previously closed because of suspicious activity suggesting structuring efforts.[63]

The pattern of multiple deposits of small amounts of dollars into the Account strongly suggests the deliberate evasion of federal reporting requirements under the Bank Secrecy Act. Whether or not these funds came from illegal activity is irrelevant because the plain language of the statute penalizes structuring regardless of underlying criminal activity.[64]

However, the Complaint is devoid of any allegations that would bring any of the checks deposited into the Account within the purview of the anti-structuring law. As a result, they do not qualify as "monetary instruments" as defined by the applicable regulations. Indeed, the Government acknowledges that "monetary instruments" include, in pertinent part:

> All negotiable instruments (including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes (as that term is defined in the Uniform Commercial Code), and money orders) that are either in bearer form, endorsed without restriction, made out to a fictitious payee

---

[63]    *See id.* ¶ 24.

[64]    *See, e.g. United States v. Thakkar*, 721 F. Supp. 1030, 1032-33 (S.D. Ind. 1989) (holding that the statute makes it illegal for individuals to structure financial transactions for the purpose of evading reporting requirements regardless of whether the purpose of the structuring is to conceal underlying criminal activity).

-22-

. . ., or otherwise in such form that title thereto passes upon delivery[.][65]

There are no allegations that any of the checks at issue were "in bearer form, endorsed without restriction, made out to a fictitious payee . . . , or otherwise in such form that title thereto passes upon delivery[.]"[66] Rather, the checks cited in the Complaint were made out to "one or both of the Mejia Cabals" and the Government does not allege that they were otherwise in such a form that title would pass upon delivery.[67] Further, the Government does not allege that there were any transactions involving the cashing of the checks.[68]

The Government, in its opposition to the instant motion, asks the Court to ignore the absence of allegations in the Complaint bringing these checks under the ambit of the anti-structuring law because the "evidence in discovery may

---

[65]    31 C.F.R. § 103.11(u)(iii).

[66]    *Id.*

[67]    Compl. ¶ 29.

[68]    *Cf. United States v. Morales-Rodriguez*, 467 F.3d 1, 11-12 (1st Cir. 2006) (affirming conviction for structuring monetary transactions and rejecting defendant's argument that the transactions at issue were not covered under sections 5314 and 5324 because they involved checks and not cash, stating that defendant's "argument fails because many of the transactions in question involved cashing checks, such that [defendant] – or someone sent on his behalf – would routinely exit the bank with thousands of dollars in cash").

-23-

reveal that Lema instructed the nominal U.S. account holders to send him signed

checks that left the payee blank, so that he could allocate funds to different

accounts."[69]  That amounts to mere speculation at this point, however, and the

Government's failure to allege facts that raise a right to relief under the anti-

structuring law above the speculative level warrants dismissal.

Additionally, the Complaint fails to adequately allege facts

supporting the Government's claim that the Defendant Funds are subject to

forfeiture as property traceable to any violation of section 5317(c).  The

Government contends that the Defendant Funds are "proceeds or traceable to

proceeds of structured transactions," even if the deposits into the Account do not

themselves qualify as structured transactions.[70]  Although the Government need

not plead "*all*" of the facts and evidence at [its] disposal . . . in the complaint[,]"[71] it

cannot premise forfeiture based simply on conclusory allegations.

---

[69]    Government's Memorandum of Law in Opposition to Claimants'
Motion to Dismiss the Verified Complaint at 22.

[70]    *Id.* at 21.  *See* Compl. ¶ 31 ("In sum, the pattern of multiple deposits
of small amounts of funds from different U.S.-based bank accounts into the []
Account strongly suggests that the Defendant Funds were *introduced into the
banking system in structured amounts* . . . and laundered through the BMPE
process.") (emphasis added).

[71]    *Dime Savings*, 255 F. Supp. 2d at 69 (emphasis in original).

Here, the Government is not required to set forth *all* of the facts and
evidence at this time, but it must plead *some* facts that support a belief that the
Defendant Funds bear a relationship, however attenuated, to structured
transactions. Instead, the Government asks the Court to make logical leaps in the
absence of facts and credit conclusory assertions that because third-party checks of
varying amounts below ten thousand dollars were deposited into the Account at
the direction of Lema, that money must have been involved in structured
transactions at some earlier point. While this may in fact be true, the Complaint as
currently pled does not sufficiently allege the Government's claim.

## VI.    CONCLUSION

For the reasons set forth above, Claimants' motion to dismiss the
Complaint is granted. The Clerk of the Court is directed to close this motion
[document no. 12].

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall
be freely granted when justice so requires."[72] While "[i]t is the usual practice upon
granting a motion to dismiss to allow leave to replead,"[73] the question of whether

---

[72]     Fed. R. Civ. P. 15(a).

[73]     *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.
1991).

-25-

to permit a plaintiff to amend his pleadings is a matter committed to the Court's

"sound discretion."[74]  The Government is granted leave to replead within twenty

days of this Opinion and Order.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              June 30, 2008

---

[74]        *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

**- Appearances -**

**For the United States of America**:

Sharon E. Frase
Assistant United States Attorney
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2329

**For Defendant in rem:**

Alan Silber, Esq.
Walder, Hayden & Brogan, P.A.
5 Becker Farm Road
Roseland, NJ 07068
(973) 992-5300